Our docket this morning, we'll now call case number 23-20533, Zyla Life Sciences v. Wells Pharma of Houston. Mr. Buchholz. Good morning, your honors. May it please the court, Jeffrey Buchholz for Zyla. Zyla brought state law unfair trade practice claims against Wells for selling an unapproved drug in violation of state statutes that require approval. The district court dismissed our state law claims on implied conflict preemption grounds based on two incorrect holdings. The first one is a misreading of Section 503B of the Federal Act where the district court thought that just because Wells registered with FDA under 503B, that meant that Wells' drugs were exempt from approval. That's not what Section 503B says. It says the contrary. The provision the district court relied on, which is subsection A, says you have to register, and then the provision goes on to say that the exemption applies if each of the following conditions is met, and the statute goes through subsections, paragraphs 1 through 11. The district court put a period in the middle of that sentence, and it said that registration by itself was enough for the exemption. That's just not what the statute says. No, I'm glad you pointed that out. I was going to ask you about that, about what the, what is it, 503B? Is that what it is? That's right, your honor. Whether merely, whether there was some sort of approval from the FDA implicit in that saying, yes, you've met all these, so you're okay under 503B, but you're saying that's not the case. That's clearly not the case, your honor. I mean, first of all, that's not what Section 503B says by its plain text, and second, if there was any doubt, FDA's FAQ on their website about registering under 503B makes this clear. It's like they anticipated Wells' argument. They say in their FAQ, registering is a good start, right, but it doesn't mean you actually comply with all the provisions of 503B. So that's, so that's, that's just. The FDA has never taken a position on whether this particular compounding entity has complied? On whether Wells' drug is exempt? That's correct, your honor. FDA's never taken a position. FDA's neutral on, maybe they comply, maybe they violate, but FDA has no position. FDA's never taken a position, as far as I know, on whether Wells' drug is exempt from 503B. There's been no enforcement action by FDA, that's true, but as the Supreme Court has made clear in cases like Wyeth v. Levine, and as the United States invitation briefs to the Supreme Court in Albertson's, the farm-raised salmon case, and Allergan v. Athena, made clear the absence of enforcement action by FDA doesn't, by itself, show that FDA approves of what the defendant is doing. So here, that's, that's exactly the case. We have no affirmative permission by FDA in any form, certainly not approval and not any other form, that the defendants are complying. And the District Court's second holding, which ultimately is really the more important one, because I think that the 503B, you know, exemption holding is just clearly contrary to the statute. The District Court then said, so, sorry, let me go back a step. So the District Court's view that Wells was exempt from approval under federal law meant that the District Court thought our state law claims added to federal requirements, instead of just paralleling them. That's wrong for the reasons I've covered. Our claims really just paralleled federal requirements. Parenthetically, it's not clear that states can't add to federal requirements in the area of drug compounding, prescription drug health and safety, and fair competition regulation. Maybe they can, but we took that question off the table. Our claims are just parallel. So then you get to the District Court's second holding, which is that even if our claims are parallel, even if Wells is not exempt from approval, our claims are still barred. They're still preempted, is the District Court thought, under Section 337A of the Federal Act. Well, what does 337A say? It says, all proceedings to enforce this subjector, meaning the FDCA, shall be brought by and in the name of the United States. That does two things. First, it makes clear there's no private right of action under the FDCA. That's not disputed. Second, you know, secondarily, it makes clear that FDA enforcement actions that you might colloquially refer to as such are actually brought by the United States, not by FDA, meaning DOJ conducts them, not FDA itself. That's important to FDA, but it's got nothing to do with this case. That's all 337A does. It doesn't say anything about states' ability to enact their own laws that parallel, rather than conflict with the FDCA. It just doesn't address that question. The District Court's holding that 337A bars our claims turns that provision into a field preemption provision. You can't have conflict preemption, implied conflict preemption, without a conflict. That's a non sequitur. So if our claims are parallel and don't conflict with federal law, then how can they possibly be preempted? The only answer is if Congress has ousted the states entirely from this field. But nobody thinks that. The Supreme Court rejected that notion in Wyeth v. Levine. This Court has rejected that notion in Hughes v. Bass v. Spano, where the Court said 337A doesn't bar claims that are brought under state law that depend on proving a violation of the FDCA or FDA regulations. In all three of those cases, it was crystal clear that the state law claims did depend squarely on proving a violation of the FDCA, because in those cases the claims involve medical devices where there's an express preemption provision in the FDCA. There's no express preemption provision relevant to this case. There's none ever been enacted relating to prescription drugs. In those cases, the only way the state law claims could get around express preemption was if they were squarely predicated on finding a violation of the FDCA. So the defendants argued, and in those three cases the district courts all held, that the fact that the claims under state law required proving a violation of the FDCA meant that they were really just FDCA claims that, as such, were barred by 337A. In all three cases, this Court reversed and said, no, they're state law claims. Yes, they depend on proving a violation of the FDCA, but that's OK. States can provide private enforcement of state law that's parallel, not in conflict with federal law. And as long as it's a recognized state law claim in an area of traditional state authority, there's no problem. That's how this Court distinguished Buckman, which the other side relies very heavily on and the district court relied on. This Court has said in those three cases that what Buckman says you can't do, 337A, or maybe it's just implied conflict preemption, it's not clear, prevents is a freestanding federal cause of action. That's the term this Court has used in those cases. So what does that mean? In Buckman itself, you had what purported to be a state common law claim, but what the state law claim was was that FDA had been defrauded into approving the device at issue. And the Supreme Court said it's not the business of states whether a federal agency has been defrauded. Placing fraud against federal agencies is a federal law problem, not a state law problem. So that sounds like a, so that one was implied conflict preempted, right? The claim you're just talking about. In Buckman? Yeah, in Buckman. Well, I mean, Your Honor, to be perfectly honest, Buckman is not exactly clear whether it's saying that implied conflict preemption barred the claim or whether 337A barred the claim. Okay. And it relies on both. All right, so it was preempted. Yes, and what this Court has said, how this Court has explained Buckman and how this Court has distinguished it in Hughes, Bass, and Spano is what Buckman bars is a freestanding federal cause of action. So if you don't have a recognized state law claim, a genuine state law claim, well, you don't have a claim because 337A... What I was trying to ask about was you were saying that the state law claim in Buckman was what? A fraud claim? What was it? The claim in Buckman was that FDA had been, was that the defendant had defrauded into approving the device. So if you could distinguish that preempted claim from the state law claims that you're bringing here. Yes, because here there's been no approval by FDA, or the whole point of our claims is Wells' drug is not approved. And as Your Honor asked earlier, there's been no action by FDA, technical approval, or any other kind of affirmative action by FDA approving what Wells is doing. So we're not trying to undo some action by FDA. There hasn't been any action by FDA. So... So the preempted claim in Buckman was you defrauded the FDA. That's right, Your Honor. The state law claim you defrauded the FDA. So that's kind of parasitic on the FDA approval process. Well, it's not just... The claim is. Yes, Your Honor. What the Supreme Court said, and what this court has said in Hughes, Bass, and Spano is the problem with a claim that's brought purportedly under state law that really is a claim that a federal agency has been defrauded is, it's not the proper province of state law to police fraud against federal agencies. So you could think of that as a, as a very narrow area of field preemption. But I'm, I'm struggling with is it, so that, that claim was what we just said it was. These claims are just paraphrasing, and you can correct me if I'm wrong, is you didn't get approval by the FDA, therefore you violated some consumer protection law under the state law. There are state statutes that require approval. Those aren't, these aren't... Approval by the FDA. Or in some cases by a state agency. Okay. In some states it's only FDA, in some states it's either. There's been no approval by anyone, by any agency, federal or state here. That's undisputed. So those, those, the states whose laws we've invoked here have enacted statutes that provide that it's illegal to sell in those states a drug without approval. Those states have also enacted statutes that make it an unfair trade practice to violate a state law like that, and that give a cause of action to a competitor like Xyla, not just to consumers. States are free to enact laws like that as long as they don't conflict with the FDCA. That's what, that's what the absence of field preemption means. There has to be a conflict for there to be conflict preemption, where our claims are parallel to federal law. They can't be conflict preempted. They could be field preempted if there were field preemption, but there isn't field preemption. Well, I take it opposing counsel is going to tell us that the better way to read Buckman is that states can't say you violated federal law, therefore you violated state law. What's your response? Well, I guess in 2001, in the immediate aftermath of Buckman, one could have made that argument, but that's in conflict with what the Supreme Court has said since then in Wyeth, and what this court has said since then in Hughes, Bass, and Spano. Right? I mean, Buckman could have been read broadly, I guess, back in 2001 when it first came out, but this court has ruled that Buckman bars a freestanding federal cause of action. It doesn't bar, in the words of Spano, a recognized state law claim. Wells is arguing things like, we're trying to bring FDCA claims in the guise of state law. There's no guise. These are state statutes that have been enacted by the state legislatures. They've given us this claim. We're not making that up. This isn't a purported state law claim. This isn't a guise. These are actual recognized state statutes that- So it was your idea that this is not parasitic the way the statute in Buckman was. Buckman's purely writing off of federal law. This is just more of a, get authority somewhere. Well, I think the problem in Buckman wasn't just that you could think of it as being parasitic. Also, the Supreme Court emphasized that a claim that specifically was that FDA had been defrauded into approving a product would require dragging FDA into the litigation. You'd have to have discovery about what information was before FDA, why did it approve, why might it have disapproved if it had had different information before it? So that would drag FDA into the case in a way that might interfere with FDA's regime. Wouldn't we, by parity of reasoning, be concerned about whether FDA had, I guess would approve this under 503B? In other words, whether this is a properly registered compounding entity? Well, Your Honor, for the reasons I tried to cover earlier in addressing the District Court's first holding, Wells may be registered under 503B, but that doesn't mean that they actually comply with, as 503B subsection A says. But if they do comply, then you can't bring a state law claim against them, right? Well, if they do comply with federal law and their drug is exempt under federal law, then our understanding of the state laws that we've invoked is that it wouldn't be a state law unfair trade practice for them to sell the drug without approval if it's exempt under federal law. We think that's not really a conflict preemption point. It's really a state law point. The states have safe harbors that vary in their wording, but the Florida one we give in our brief is an example where as a matter of state unfair trade practice law, it's not a state law violation to sell a drug that's unapproved if it's not required to be approved under federal law. Is it fair to say that a state law unfair trade practice claim like that, is it fair to characterize it this way? If you sell a drug that is not approved by the FDA or does not come within the 503B exception, I don't know if it's an exception, 503B, then you have no state law claim. I'm sorry, then we have no state law claim? No state law claim, right. Your state law claim fails. Maybe I misheard the question. I think our state law claim... I'll ask it again. If your unfair trade practice claim against your opponent, if you have been approved by the FDA or you qualify under 503B, then you have no state law claim. Our state law claim would fail under state law, not as a matter of preemption, but under state law if they comply with it. I'm not asking about preemption. This is prior to that. I'm asking on what basis would your state law claim fail? It sounds like it would fail because either the FDA has approved or you qualify under the 503B factors, right? Well, FDA hasn't approved. That's not in dispute. So the real issue is whether they comply with 503B and therefore they're exempt from approval. Our view of the state laws we've sued under is that as a matter of state law, if they really are exempt from 503...exempt under 503B from approval, our state law claims would fail. But the district court didn't purport to find that they're exempt from 503B because they actually comply with it. The district court just said they're registered, therefore they're exempt. That's wrong. You can't assume in the defendant's favor at the pleading stage that they actually comply with all the different 11 requirements of 503B. We don't think they do. We've made clear in our briefs why we don't think they do, but that can't be decided or assumed in their favor at the pleading stage. So, sorry, before I run out of time, I'll go ahead, Your Honor. I'm sorry. So I do want to make sure I understand your theory of Buckman. So I'm sorry if I'm repeating myself. One theory of Buckman is if you violate federal law, then you violate state law. And we've discussed that that probably would disparage your theory. You clearly think that's not the correct reading of Buckman based on subsequent developments. That's fine. What is your theory of Buckman? What's the rule of Buckman, as we should understand it today, that doesn't somehow taint your case? Thank you, Your Honor. The rule of Buckman that I would advocate, and it's not really my theory, it's really this Court's theory in Hughes, Bass, and Spano, is that Buckman bars a freestanding claim under the FTCA. Section 337A says there's no such claim, so if you try to bring such a claim, I would argue it's not really preempted. It's just you don't have such a claim because Congress didn't create a private right of action. Because there is no federal claim. Correct. Oh, I see what you're saying. In other words, under federal law, a private person can't sue because of fraud on the agency. The agency can sue, but nobody else. It's just a U.S. action. Correct. What Buckman says is that policing fraud against a federal agency like FDA is not the proper province of state law. It's the province of federal law. Buckman doesn't use the term field preemption. You could think of that as being field preemption, where the narrow field is policing fraud against a federal agency. That's just not the proper business of state law. What's the provision of — if your principle, then, is so long as federal law recognizes the claim, then state law can also supplement, what is the provision here that will allow you to bring a federal claim? Well, I'm sorry, Your Honor, that's not what I meant to say. Okay, I'm — no, that's me. I'm sure I misunderstood you. So, to be clear, we recognize that there's no private right of action under the FTCA. That's what I thought. That doesn't mean — it doesn't follow from that, that states can't create their own laws and provide for their private enforcement. So that — so this goes back to our discussion about Buckman, then. What is the rule of Buckman that you would propose that answers the Buckman case but also allows you to proceed? The rule of Buckman is that you can't bring a state law claim for fraud against FDA. That's — that's the claim that was issued in Buckman. Okay, but — And this Court said in Hughes — I mean, a half-step, a small step from Buckman would be you can't bring a claim under state law that depends on your interactions with FDA. All right, Buckman was actually — the claim was actually that FDA had been defrauded into granting an approval. And in Hughes — Okay, so it's sort of a unique — it's just unique to the context of if we're troubled by your interactions with a federal agency, let's let the federal agency take care of that. We presume that states should not get involved in that, even — and that's just not a present factor here. Is that sort of the idea? Sort of, Your Honor, except that what I was going to say about Hughes is, in Hughes, one of the claims was that the defendant had violated state law by not filing adverse event reports with FDA, as required by federal law. Now, you could think of that as very close to Buckman. That's a claim that depends on your interactions with the federal agency. But this Court said that claim was not barred by 337a because it wasn't about defrauding FDA into granting an approval, which was what was at issue in Buckman. It was a different kind of claim. So this Court has read Buckman narrowly. Again, this isn't really my theory of Buckman. It's this Court's interpretation of Buckman. And under that interpretation, the state law claims we've brought here really are state law claims. They're not some guise. They're not something we've made up. These are state legislatures that have enacted statutes that we've invoked that we have a right to do, unless our claim conflicts with federal law. But it doesn't. What the other side is really arguing is not a conflict with substantive federal law, because there isn't one. What they're really arguing is that our state law claims impinge on FDA's enforcement discretion. And that would be a very, very broad interpretation of what Section 337a does. It really would mean that it preempts the field, that it outstates entirely from the field. Does that language impinge on the FDA's sole enforcement authority? Does that come from Spano or Buckman, the impinge on enforcement authority idea that you were talking about? Well, I think the other side is pulling that language from the Ninth Circuit's decision in Nexus, primarily. But my point about the notion that preemption, the other side is really arguing the district court in its second holding really held that our claims are preempted, even if they don't substantively conflict with federal law, even if they're parallel, because they provide for enforcement of a given parallel rule under state law, under circumstances where FDA hasn't brought the action. But the Supreme Court held in Kansas against Garcia that the supremacy clause gives primacy to the laws of the United States, not to the enforcement priorities or discretion of federal officers. So the mere fact that state law is providing for enforcement, if you want to say loosely, of a rule that exists under state law and also in parallel under federal law, where FDA hasn't brought the action, doesn't mean it's preempted. Because what that would mean is, only FDA can bring enforcement actions for these given rules, which is another way of saying the FDCA preempts the field and outstates from it entirely, even absent a conflict. That's contrary to Wyeth against Levine. It's contrary to this court's precedent. So this court should reverse and allow Zila's claims to proceed. I see that I've exceeded my time. Thank you, Your Honor. That was our fault. And we'll, of course, make sure both sides get equal time. Thank you, Your Honor. Thank you. You've reserved five minutes. Mr. Grable. Have I pronounced that correctly? Grable. Good morning, Your Honors. Good morning. Jeremy Grable for Wells Pharma. If I may, I thought I would start by maybe taking just a step back. I want to dive into all the specific details here in a second. But I think when you put the case, the claims that Zila is trying to bring here in the proper context, I don't think they get out of the gate. Okay. 337, we've talked about that. Congress has given the FDA exclusive enforcement authority under the Federal Food Drug Cosmetic Act. The Supreme Court has held in Heckler v. Cheney that under the APA, nobody can challenge the FDA's decision not to enforce in a certain circumstance. That is immune because Congress has given the FDA sole enforcement authority. So if the FDA decides we're not going to enforce against this particular manufacturer, that's immune from challenge under the APA. We know from Judge Duncan's decision two years ago in the Horstman's case that the FDA could not delegate that enforcement authority to a private entity, such as a big drug company. That would be unconstitutional. Yet Zila, a private entity, wants to unilaterally assume that enforcement authority and file a claim against us that says you are not following 353B, the Federal Compounding Statute, or the general approval, premarket approval, federal statutes. So in that context, a private entity unilaterally trying to enforce the FDCA against a competitor, I don't think the claim gets out of the gate. The trouble is that there are kind of competing decisions about parallel claims, what's preempted, what's barred. I want to talk about that a little bit. The main case that we think this Court should look at is Morris v. Pliva, Fifth Circuit, 2013. And it's claims against a generic drug manufacturer. This Court made clear that if the breach of an alleged duty, if the duty arises under federal law, the Court said that Pliva, the defendant, the claim is that Pliva breached a federal labeling obligation. That sounds exclusively in federal law. It's preempted, citing 337 and Buckman. It doesn't really get into the details of implied conflict preemption. The point is, if the so-called state law claim arises solely under federal law, exists solely because of a breach of a federal duty, that's a preempted claim, or it's barred under 337. What kind of preemption are you asking us to find? I think it's a little unclear. I think the Court in Morris just said it was preempted. I think that's implied conflict preemption. I do not think this is a field preemption issue. Zyla talks a lot about field preemption. The parallel cases that they rely on, Hughes and Spano and others, those are traditional state law tort claims by injured patients who took the drug. They have negligence claims. They have failure to warn claims. They have breach of warranty claims. Those are traditional state law claims that have nothing to do with federal law. Can I pause you? Yes. I appreciate two things. One, I appreciate that we're not talking about field preemption. That's very helpful to narrow the disagreement. Two, I appreciate the phrase you used, traditional state law tort claim, because that makes sense to me. What do you do with the Solicitor General's brief in Athena that says that not only is it a traditional state law tort province to do unfair competition claims, which obviously this is, but two, specifically, state law unfair trade competition vis-a-vis unapproved drugs? So a couple of points on the— I mean, that's the United States speaking for the United States. Well, 10 years ago, Your Honor, President Obama's Solicitor General—I don't know what the position would be today. I don't know what the position would be in a few months. It also was not a the—Buckman talks about the delicate federal balance that was at play there. There's a quite delicate federal balance at play here between pre-market approval and compounding. And the FDA—obviously, it's no secret, the big drug companies don't like compounding. And this, I don't think it's hyperbole to suggest that if these claims were allowed to go forward, we could very well eliminate compounding in the country. And the FDA and Congress does not want that to happen. Congress created 353 to allow for compounding. It's important— All right. Why would that get rid of compounding? I thought this was just a method of enforcing laws that are already on the books. We can debate whether that's preempted, but it's not creating new burdens that don't exist now. No, but I mean, subjecting compounding pharmacies to these sorts of state law claims, I think it runs the risk of at least deterring compounding, if not running us out of business, having to defend these sorts of lawsuits. I'm not seeing that. Why isn't this just more effective, efficient, robust enforcement of laws already on the books? Because we have—I think you're—I guess my point is that compounding pharmacies, if you go through 353B, there's a variety of requirements. So we have to submit, I think, biannual reports to the FDA about what we're doing, which drugs we're making. We're subject to inspections. FDA—it's not part of the record, but FDA has come into our facility multiple times. FDA knows what we're doing. So they have— Which would mean, at a minimum, you'd win these suits on the merits. We can debate the preemption separately. Right, but they've decided— Not shut down at all. No, but they've decided that the FDA has decided, in its exclusive discretion that Congress gave it, that we're not violating 353. And in fact, one other point I wanted to make, the first amended complaint in this action does not allege that we're violating 353. It simply alleges that we don't have premarket approval. So this whole theory has all come through counsel. They didn't even file a motion for leave to amend. They didn't submit a proposed second amended petition. It's all—it's all just language from counsel that they told the district court, well, you know, we wouldn't do this, we wouldn't do that, we would limit it this way. That's—that's not even— So we, under that theory—sorry to interrupt, but are you suggesting we could affirm on the alternative ground of inadequate pleading and then avoid the preemption question altogether? I'm not saying we will, but is that what you're voting? As a procedural matter, I think so. I mean, when—I don't know, I think it's strange to be evaluating this without even an act of pleading that makes the allegation. But they did, in their opposition to— They seek leave to amend. Should we— They ask— Filed leave to amend? No, I would not think— I know you don't want that, but, I mean, why not? That would—it's not futile. There would at least—that would tee up your preemption theory. Well, the district court held that it would be futile, and I think that we can—you can affirm on that grounds for all the reasons I'm saying. This—these state law claims would not exist but for the alleged violation of the federal compounding rules. And under Morris v. Pleva and Buckman, that's preempted or barred by 337. I think that's kind of where the jurisprudence could use some clarity. Are we talking about implied conflict preemption, or are we just talking about 337? But that's the fundamental distinction between all the parallel cases brought by injured plaintiffs and these cases that are barred. Why is it not a different way of looking at this claim? Look, obviously, state law unfair competition claims have existed forever, predate the Sherman Act. This is the heartland of what states do. And so what the state has done in this case is to say, unless you're actually conflicting with federal law, comma, you have a state law unfair competition claim, right? So, like, I hear your framing of it. I understand Buckman's your best case. I appreciate the Pleva site. And I can see what you're saying, which is, like, it's predicated on a violation of federal law, but they're not really having to prove—like, there's no elements of federal law they're incorporating into their cause of action. They're saying, here's a state law cause of action that exists totally independent, and we're just going to add a little thing at the beginning that says, unless conflict preempted, right, that's the thing that would come from the approval that you might have. Then, otherwise, you have a state law claim. I understand that, and that is — they're trying to sort of get in under the — that's their traditional state law claim. Do you agree with that framing of the state law claim? No, I don't. I mean, at the end of the day, I mean, I think that's why — I think that's why we don't have — Well, why not? Well, I think that's why we don't — I actually think that's persuasive. I think that's why we don't have a second amended petition, because they would have to go through — they would have to allege that we're violating 353B. They would have to allege that we're violating federal law. Okay, so we've got a pleading issue. Maybe we'll hear it. No, but that's — no, no, no. Beyond FDA approval or qualification under 353B — sorry, I was misstating that — beyond that, what are the elements of the state law claim? Yeah, I don't know. There are no — that's our point here. Well, I thought the idea was states can also approve, even if the feds don't. I thought that was the premise. There are no state compounding rules. This is just a generic unfair competition statute. I don't know. That's where I come back to PLEVA in the other cases. That's what I'm asking. So this is state unfair competition equals what? That's what I'm asking. Equals what? I think the theory here is if you violate — it's like Judge Ho said in the reading of Buckman. If you violate federal law, therefore you violate state law. I don't know. It's not — I understand that we — I think we said in Spano you can bring an independent — you can bring a claim based on an independent state law duty for which violations of the FDCA may be evidence of breach. Right. So explain to me why that doesn't defeat your claim, what I just read. Because I don't — there is no other independent duty beyond the federal — the alleged federal breach. Again, in the injury cases, there are traditional negligence duties. You can't sell somebody a product that hurts them. In the unfair competition context here, I don't understand what we've done that's unfair. We believe we're following federal law. FDA has chosen not to and has exclusive authority to make that decision. What else have we done? That the allegation is solely premised on the federal violation. And I think that's what distinguishes this theory from the traditional tort claims that have been allowed to survive, where, as Judge Engelhardt said in Spano, if it's just evidence, if the FDA violation is just one piece of evidence, that's okay. That's — we're not going to — that's not preempted. That's not barred. But when the fundamental claim — I mean, the fundamental claim here is compound — my client, a compounding pharmacy, you know, has not complied with the FDA rules. But that's a relationship between the FDA and the compounding pharmacy. And that's governed by federal law. What is your response to counsel's argument that Buckman should be limited to sort of this idea that you can't sue under state law for defrauding the FDA? Because that is a narrow view of Buckman, and I think the argument is that we've sort of — I guess maybe we've adopted that view. I don't know whether we have or not, but our cases say what they say. Yeah, I think that is a very narrow reading of Buckman. I don't think — again, I keep coming back to Morris, but in Morris, this Court cited Buckman for the proposition that when the duty is a federal duty, when the breach is a breach of a federal duty, Buckman says that's improper. You can't have a state law claim that's premised on that. So I think Buckman stands for the proposition that Judge Hoh suggested earlier. If the duty that is alleged is a federal duty under federal law, that interferes. Allowing a state law claim in that context interferes with the delicate federal balance. So I don't think Buckman is limited to fraud on the FDA. That happens to be the circumstance in which the principle was — To be clear, I was characterizing what I took to be your position. I'm still debating it. But just since I gave the other side a chance to address yours, why don't you go ahead and I take it to be it's not that principle at all, but rather sort of a notion that it's unique to this context where it's all about the relations with the federal agency, and we'll leave it to the federal agency to decide whether they feel grieved or not. No, I think that's right. But that would not cover yours. Or I take it you think even that narrow theory would also lead to preemption here? I'm sorry, Judge. I may have misunderstood you. Yeah, I'm sure I'm not saying it well. The other side rejects this notion that Buckman says if it violates federal law, it violates state law. They think that's way over reading what Buckman says, and that all really Buckman is is about fraud on the FDA. And I think the notion is that all turns on conversations between a regulated entity and the FDA. That's the exclusive province of the FDA. We're not going to let third parties involved there. That has nothing to do with this case. Right. Your response? I don't think Buckman is limited to the situation where a defendant actually communicates something to the FDA. I think this court has recognized that it's broader than that. Buckman deals with the relationship between a defendant and the FDA and the situation where the alleged breach of the duty is a federal duty. So I think it's much broader. I think Buckman would absolutely govern here, just like it did in Morris v. Oliva. The fact that we are subject to exclusive FDA oversight and that the FDA has not decided to enforce that against us because we're complying with it, and there's no other state law duties or obligations here, I think it's barred by Buckman in 337. So two questions. One, the opening line of the discussion in Buckman says the fraud committed on a federal agency is not the traditional heartland of state law. So that's yet another way of understanding that case, again, compared to the Athena brief that the FDA filed through the Justice Department and to our circumstance. So I'm curious about your response to that different way of understanding Buckman. But the other thing I don't understand is, your theory of Wyeth is, well, Ms. Levine was injured by this drug in a way that is traditional state tort principles. But all of the arguments that you're making are the same ones that Wyeth made in that case. They said, we've complied with federal law. Safety and effectiveness is a thing that the FDA does. We're subject to federal enforcement actions. We complied with the black box warning. We have a whole thing about don't inject this drug into the antecubital space. What else are we supposed to do? This is the FDA's deal, not yours. And the Supreme Court said, sorry, when it comes to injured plaintiffs in traditional tort law, this is the province of Vermont, not Washington, DC. I think I would distinguish Wyeth and other cases like it because they are traditional injury cases, traditional tort law negligence cases. I do think also that in Wyeth, the plaintiffs, they wanted the defendant to go beyond what the FDA required as a matter of state law. And that's a little bit different than here, which, again, the claim here is exclusively you violated federal law, so therefore you violate state law. It's not like they're trying to add something on top of it. I mean, those are two ways to distinguish it, Your Honor. I think the compounding world is a different world. I really do. I know we don't always, I know down here we don't always agree with what the Ninth Circuit does, but I think they got it right in Nexus. It's exactly the same situation. There are cases percolating up in the Croce case. That's not a compounding case, but very similar reading of Buckman in 337. So I think there are a lot of courts that have adopted our view on this, and I frankly think the position being advocated by Zyla would result in a split on that issue, and I don't think that would be appropriate. I think Nexus is right on point and was right, correctly decided. Is there a current split anyway? I don't think so. They rely on Athena, which is a federal circuit case, but it was applying Ninth Circuit law. In Nexus, the Ninth Circuit said that the federal circuit was wrong, so the Ninth Circuit has sort of disavowed Athena. So I would not say that's a split. I think Athena has essentially been overruled by the Ninth Circuit in Nexus. I mean, obviously the federal circuit's dealing with patent issues. That wasn't even, I mean, there was a patent issue in that case, but that aspect of the holding was not a patent law issue. So no, I don't think there's a split. Again, I guess on the issue of preemption, I would come back to the general points I started with. Congress has spoken clearly on this, both with respect to compounding and who should be enforcing those rules, and the FDA has exclusive discretion, couldn't delegate it to a private company, but yet here's a private company trying to take it. So on those issues, judges, we think the district court was correct and should be affirmed. Very briefly, on our cross-appeal, obviously we think that we're entitled to attorney's fees under the Florida statute. Florida Supreme Court and the Eleventh Circuit are pretty clear on that. The district court thought that those Florida and Eleventh Circuit cases weren't binding on it. This is the eerie substantive procedure point, right? Yeah, but I— Why do you think this is procedural? I think that's what the Eleventh Circuit has certified a question to the Florida Supreme Court. I think it's the Horowitz case we cited, and they made clear that when a plaintiff makes a claim under the Florida Unfair Trade Practices Act and that claim fails for whatever reason, the defendant should be entitled to fees. So we would simply ask for a limited remand so that the district court can consider a fee award, which I think would go a long way towards, frankly, discouraging these types of improper cases that every court has rejected that's considered them. But unless the court has any further questions, I'll stop there. Thank you. Thank you. Mr. Buchholz. Thank you, Your Honors. So I heard a lot from my friend just now about exclusive FDA oversight, exclusive FDA discretion. Where did Congress say that FDA has exclusive discretion? The answer is nowhere. Wyeth v. Levine, Judge Oldham, you're correct, rejected the same argument. The defendant in Wyeth v. Levine, actually supported by the U.S. government, speaking for FDA, said FDA's oversight over prescription drugs, maybe not quite exclusive, but should be preemptive. The Supreme Court said no, that FDA oversight is not intended by Congress to be exclusive, that Congress preserves a role for the states. The same thing is true here. That holding is applicable here. It forecloses the notion that just because FDA hasn't taken action against Wells, that that means that there's no role for the states. And, you know, Judge Oldham, again, Your Honor, asked about traditional state authority and, you know, why is Wyeth any different? Well, it's not. The Supreme Court in ARC America said that unfair competition is a traditional area of state authority. Just remind me, in Wyeth, what was the state law claim and what were the elements of it? Well, I think there probably were multiple state law claims. They were, in essence, negligence claims. And, you know, yes, it was an injured plaintiff who said that a failure to warn in accordance with state law, you know, had caused her to be injured. Here, it's a different kind of injury. It's an unfair competition injury. But the point that matters for preemption purposes is that unfair competition is just as much a traditional area of state authority as the personal injury. It might be, but so in this case, unfair equals X. And is there anything beyond X than you didn't get FDA approval? Well, injury to us, just like in Wyeth, I mean, again, that's a different kind of injury, unfair competition versus personal injury. But the state law unfair competition statutes that we've invoked, of course, require us to prove that we've been injured. And some of them, I mean, they're all worded slightly differently. But the gist of it is the states have said that it's unfair competition as a matter of state law to sell a product that you're not allowed, under federal law or under state law, to sell. Which brings me to the next point I was going to make, which is, again, I heard a lot from my friend that our claims exist solely because of federal law. They're solely premised on violations of federal law. The states have enacted statutes that say you can't sell a drug in these states without approval. Those are state statutes to say that, well, or in some cases, state approval, right? But the point is... If it's FDA approval, then how is it a state law claim that is not entirely parasitic on federal law? Well, because, Your Honor, the states have enacted statutes that say we, the state, have decided that in our state, you can't sell a drug without FDA approval. The Supreme Court in California against Zook a century ago, and more recently in lots of other cases, including Wyeth, has made the point that states are generally free to make a violation of federal law a state law violation. The exception to that is where there's field preemption, because then the states aren't allowed to be involved in the first place in the area, even absent of conflict. So the idea that our claims are solely premised on federal law is just another way of saying we're going to ignore the state statutes that these state legislatures have enacted that we've invoked. You can't ignore those state statutes. Again, Wells keeps arguing things like, you know, our claims are really just federal law claims in the guise of state law, as if there's no actual state law basis for these claims. But there are state statutes that give us these claims. And to say that we can't invoke those statutes where there's no conflict with is another way of saying the state legislatures lack the authority to enact those statutes, which just comes down to field preemption, which is why I keep talking about field preemption. I want to come back to the SG's invitation brief, not just in Athena that Your Honor asked about, but also in the farm-raised salmon case. I think my friend made a comment about how that was some years ago in a different administration. The two invitation briefs filed in farm-raised salmon in 08 and in Athena in 15 were very similar. They took the same position. Those 08 and 15 obviously were two different administrations. What's interesting about the farm-raised salmon brief in 08 is that brief was filed while Wyeth was pending. So the U.S. was arguing on behalf of FDA for much broader preemption than the Supreme Court ultimately adopted. And yet, the SG said on behalf of FDA, state law claims predicated on a violation of the FDCA are still state law claims. They're not disguised improper FDCA claims barred by 337. And if that was true, even in a world where the SG thought that FDA regulation of prescription drugs barred most state law claims, which the Supreme Court rejected in Wyeth, then it's a for sure true under Wyeth. So again, this really isn't a complicated case as a matter of preemption. We have state statutes in an area of traditional state authority that give us this claim for a violation of state law, not just a violation of federal law. And if our claims conflicted with federal law, that would be one thing, but they don't. If our claims conflicted with a determination made by FDA applying federal law, then you could argue about whether that's a cognizable conflict for preemption purposes or whether that's just a enforcement discretion issue under Kansas against Garcia that doesn't support preemption. But there's no such determination by FDA here in the first place. So there's nothing that our state law claims could possibly conflict with. The only way they could be preempted is if there's field preemption. Nobody thinks there's field preemption. My friend is not even willing to argue that out loud. Thank you very much, Your Honors. Thank you. Case is submitted and we are adjourned.